| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK | **FOR PUBLICATION** |
| ------------------------------------------------------------x | |
| In re | Chapter 7 |
|     NINA ABRAMOV and<br>    BORIS ABRAMOV | Case No. 02-26287-608 |
|                              Debtors. | |
| ------------------------------------------------------------x | |
| NEW WORLD RESTAURANT GROUP, INC., | |
|                          Plaintiff, | Adv. Pro. No. 03-1688-608 |
|     - against - | |
| BORIS ABRAMOV and NINA ABRAMOV, | |
|                        Defendants. | |
| ------------------------------------------------------------x | |

<u>DECISION</u>

APPEARANCES:

| | |
|---|---|
| Bruce H. Babitt, Esq.<br>Wolman, Babitt and King, LLP<br>521 Fifth Avenue<br>New York, New York 10175<br>Attorney for the Plaintiff | Steve C. Okenwa, Esq.<br>902 Kings Highway<br>Brooklyn, New York 11223<br>Attorney for the Defendants |

CARLA E. CRAIG
United States Bankruptcy Judge

New World Restaurant Group, Inc. brings this adversary proceeding to object to the discharge of Boris and Nina Abramov, pursuant to 11 U.S.C. §727(a)(2)(A), §727(a)(4)(A) and §727(a)(5). New World asserts that Boris Abramov fraudulently transferred his half-interest in a home, which he owned with his mother, to his sister 5 months prior to the filing of the debtors' joint bankruptcy petition, that the debtors knowingly and fraudulently made false oaths on their petition, and that they have failed to satisfactorily explain the loss of their assets.

For the reasons set forth below, Boris Abramov is hereby denied a discharge under Bankruptcy Code §§727(a)(2) and 727(a)(4)(A), and Nina Abramov is denied a discharge under §727(a)(4)(A).

## Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 11 U.S.C. §§1334(b) and 157(b)(2)(J) and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusions of law after a trial on the merits to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Facts

During the late 1990's, the Abramovs operated three New World Coffee shops located in New York City.

The Abramovs's New World franchise application, dated May 2, 1999, listed their chief liability as a $180,000 mortgage, which was secured by their chief asset, a house owned by Borris Abramov, located at 108-29 65th Road, Forest Hills, Queens, that they asserted was worth $380,000.

The Abramovs's statement in the franchise application that Mr. Abramov was the fee simple owner of the Forest Hills residence was, in fact, untrue. At the time, Mr. Abramov owned a one-half interest in the Forest Hills residence with his mother, Tamara Abramov, as tenants in common. The real property was his mother's primary residence and Mr. Abramov testified at trial that he has never lived there. (Tr. - Day 1 47:19-48:4.)[1]

New World entered into three franchise agreements with the Abramovs. The debtors formed a separate corporation to run each franchise. (N. Abramov 2004 Tr. 34:4-22.)[2]

Sometime in late 1999 or early 2000, the debtors defaulted under the terms of the New World franchise agreements, and on June 29, 2000, the parties entered into a settlement agreement. In consideration for New World entering into this settlement, the debtors delivered two promissory notes to New World that were secured by liens on all of the assets of the three franchises that they operated, and by Boris Abramov's interest in a radio car in Boston, Massachusetts.

Shortly thereafter, the Abramovs again defaulted under the terms of their New World franchise agreements, and on December 5, 2001, the parties entered into a second settlement agreement. In consideration for New World entering into this second settlement agreement, the Abramovs, who were represented by counsel, delivered to New World two affidavits and confessions of judgment, each for $100,000, plus interest and fees. New World agreed not to

---

[1] "Tr. - Day 1" refers to the transcript of the first day of the trial, which was held on April 26, 2005.

[2] "N. Abramov 2004 Tr." refers to the transcript of Nina Abramov's Rule 2004 examination, which was held October 16, 2003.

record the confessions of judgement so long as the Abramovs complied with the terms of their settlement agreement.

The Abramovs defaulted under the terms of the second settlement agreement and New World filed both confessions of judgment in Kings County on January 23, 2002, and filed one of the confessions of judgment in Queens County on June 5, 2002. On March 27, 2002, New World served the Abramovs with subpoenas ordering them to appear for depositions and to produce documents that would assist New World in locating their assets. Pursuant to §5222 of the New York Civil Practice Law and Rules, the subpoenas that were served on the Abramovs were accompanied by restraining notices prohibiting the Abramovs from selling or transferring any property in which they had an interest except upon direction of the sheriff or pursuant to court order, until New World's judgment was satisfied.

Notwithstanding the pendency of the restraining notices, on July 8, 2002, Mr. Abramov and his mother sold their interests in the Forest Hills residence to Mr. Abramov's sister, Ms. Angela Pinkasov, for $300,000. As part of the sale, Mr. Abramov and his mother gave Ms. Pinkasov a $75,000 gift of equity and a $10,000 credit towards closing costs, which reduced Ms. Pinkasov's purchase price to $215,000. After paying the existing $181,100 mortgage on the property and the closing costs, the total amount realized from this sale by Mr. Abramov and his mother was $27,230.63, which was delivered in a check to Mr. Abramov.

On December 24, 2002, the debtors filed their joint voluntary petition for relief under chapter 7 of the Bankruptcy Code. On schedule A of their petition, the debtors listed Boris Abramov as the owner of a one-third interest in the Forest Hills residence, which had been transferred to Mr. Abramov's sister five months earlier. In their petition, the debtors declared,

under penalty of perjury, that the Forest Hills residence was worth $300,000 and was subject to a $280,000 mortgage. The debtors also claimed a $10,000 homestead exemption on their petition pursuant to §522 of the Bankruptcy Code, which incorporates Article 10A, §282 of New York's Debtor and Creditor Law and §5206 of New York Civil Practice Law and Rules. There is no mention in the Abramovs's petition of the sale of the Forest Hills residence to Ms. Pinkasov nor of the $27,230.63 payment by Ms. Pinkasov to Mr. Abramov.

The debtors did not appear at the first §341 meeting of creditors and the meeting was rescheduled for March 11, 2003. Both debtors attended the rescheduled meeting and testified that their petition was complete and that they did not wish to make any corrections. (§341 Tr. 5:13-6:2.)[3] Mr. Abramov testified that he owned a one-third interest in the Forest Hills residence; however, he stated that neither he nor his wife lived in the house. (§341 Tr. 6:12-7:7.) Mr. Abramov further testified that the house was worth $348,000, $48,000 more than the value listed on the petition, and that the house was subject to a $223,000 mortgage, which was $57,000 less than the amount listed on the petition. (§341 Tr. 9:7-13.)

On August 28, 2003, Ms. Pinkasov filed an affirmation in opposition to New World's motion for an extension of the time to object to the debtors' discharge, claiming that she had purchased the house from Mr. Abramov in good faith and for valuable consideration and had been unaware of any judgments in favor of New World at the time of her purchase. On the same day that Ms. Pinkasov filed her opposition papers, Mr. Abramov signed an affidavit amending schedules A and C to the Abramovs's petition, stating that they had "erroneously indicated" on their petition an interest in the Forest Hills residence and that they had subsequently realized that

---

[3] "§341 Tr." refers to the transcript of the §341 meeting, which was held on March 11, 2003.

no such interest existed because Mr. Abramov had sold it prior to the filing of their petition. However, the debtors did not amend their statement of financial affairs to include the gift of equity to Ms. Pinkasov or the receipt by Mr. Abramov of the sale proceeds.

In addition to "erroneously" listing Mr. Abramov's ownership interest in the Forest Hills residence on their petition, substantially understating the value of the property, and failing to disclose the transfer to Ms. Pinkasov, the debtors' statement of financial affairs was rife with other inaccuracies and omissions, including, among other things, failure to list the three corporations that they had established for the franchises within the 6 years period prior to filing their petition, failure to list a 401(k) plan in which Mrs. Abramov participated, and failure to disclose the sale by Mr. Abramov of his interest in the radio car in Boston, Massachusetts.

## Discussion

The "central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt' . . . . [However], the Act limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'" Grogan v. Garner, 498 U.S. 279, 286-287, 112 L. Ed. 2d 755, 764-765, 111 S. Ct. 654, 659 (1991) (citations omitted).

Whether a debtor had actual intent to defraud is a question of fact for this Court to determine. 6 Collier on Bankruptcy, Sec. 727.02 at 727-21 (15th Ed. 2005), citing In re Snyder, 152 F.3d 596, 601 (7th Cir. 1998); First Texas Savings Ass'n, Inc. v. Reed (In re Reed), 700 F.2d 986 (5th Cir. 1983).

Section 727(a)(2)(A) authorizes the court to deny the debtor a discharge if:

> With intent to hinder, delay, or defraud a creditor . . ., [the debtor] has transferred, removed, destroyed, mutilated, or concealed or has permitted to be transferred, removed, destroyed, mutilated or concealed -
>
> > (A) property of the debtor, within one year before the date of the filing of the petition;...

11 U.S.C. §727(a)(2)(A).

Pursuant to Bankruptcy Rule 4005, New World has the burden of proving its objection to the debtors' discharge by a preponderance of the evidence. Fed. Bankr. R. 4005; Corning Vitro Corp. v. Shah (In re Shah), 169 B.R. 17, 20 (Bankr. E.D.N.Y. 1994). Once the creditor has established a prima facie case, the burden shifts to the debtors to provide a satisfactory explanation for their actions; however, the ultimate burden of proof rests with the creditor. Shah, 169 B.R. at 20, citing In re Reed, 700 F.2d 986, 992-93 (5th Cir. 1983). Objections to a debtor's discharge are strictly construed against the objecting party and liberally in favor of the debtor to promote the bankruptcy goal of a "fresh start" for the honest debtor. In re Adlman, 541 F.2d 999, 1003 (2d Cir. 1976); Bank of India v. Sapru (In re Sapru), 127 B.R. 306, 316 (Bankr. E.D.N.Y. 1991); In re Shapiro, 59 B.R. 844, 847 (Bankr. E.D.N.Y. 1986).

In order to prevail on an objection to discharge under §727(a)(2), the plaintiff must prove:

1. that the act complained of was done at a time subsequent to one year before the date of the filing of the petition;

2. that the act was done with actual intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code;

3. that the act was that of the debtor or his duly authorized agent; and

    4.    that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done.

Minsky v. Silverstein, 151 B.R. 657, 660 (Bankr. E.D.N.Y. 1993) (citation omitted).

It is undisputed that Mr. Abramov transferred his interest in the house to his sister, and that he received the proceeds of that sale, well within the one-year period prior to the filing of the Abramovs's joint petition. 11 U.S.C. §727(a)(2)(A); (Tr. - Day 1 147:25-148:6).

Proving that a debtor acted with actual intent to defraud is the most difficult element for a creditor to establish, because ordinarily, the debtor is the only person able to testify regarding his or her intent and is unlikely to admit to fraudulent intent. Silverstein, 151 B.R. at 660, citing Job v. Calder (In re Calder), 907 F.2d 953 (10th Cir. 1990). Therefore, courts have developed "badges of fraud" that are objective indications of actual intent to defraud creditors. Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582 (2d Cir. 1983), citing In re Freudmann, 362 F. Supp. 429, 433 (S.D.N.Y. 1973), aff'd, 495 F.2d 816 (2d Cir. 1974) (per curiam).

Among the circumstances from which courts have inferred intent to defraud are:

    1.    the lack or inadequacy of consideration;

    2.    the family or other close relationship between the parties:

    3.    the retention by the transferor of possession, benefit or use of the property in question;

    4.    the financial condition of the transferor both before and after the transaction in question;

    5.    the existence or cumulative effect of a pattern or series of transactions or a course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

   6.  the general chronology of the events and transactions under inquiry.

Kaiser, 722 F.2d at 1582-83.

  The evidence demonstrates that the transfer of Boris Abramov's one-half interest in the Forest Hills residence to his sister, five months before the commencement of this bankruptcy case, was made with intent to defraud the debtors' creditors by reducing the assets available to satisfy their claims.

  With respect to the first badge of fraud, the consideration paid by Ms. Pinkasov to Mr. Abramov and his mother was clearly inadequate. Mr. Abramov stated in his Rule 2004 examination that he obtained the value of the Forest Hills residence that was used in the debtors' petition from an appraisal of the house that was performed in connection with the "refinancing" of the house. (B. Abramov 2004 Tr. 8:15-9:13.)[4] The appraisal to which Mr. Abramov referred, which was received in evidence without objection, shows that the appraiser valued the house, which was sold to Ms. Pinkasov for $300,000, at $400,000. Indeed, the appraiser wrote in a supplemental addendum to the appraisal report that "the sales price of $300,000 is not indicative of local value trends. After adjustments for all applicable market factors, the value range is $400,000 with all comparable supporting subject market value. This sale appears not to be an arms length transaction." (Plaintiff Exhibit 25.)

  In addition, Mr. Abramov and his mother gave Ms. Pinkasov a $75,000 gift of equity and a $10,000 credit towards closing costs in connection with the sale of the house. Given that the house was sold for $100,000 less than its value and that Ms. Pinkasov received an $85,000

---

[4]"B. Abramov 2004 Tr." refers to the transcript of Boris Abramov's Rule 2004 examination, which was held on October 16, 2003.

reduction to the sales price, it is clear that the transfer of Mr. Abramov's interest in the Forest Hills residence was for inadequate consideration.

The second badge of fraud was also present in this transaction. All the parties to this transaction – Mr. Abramov, his mother, and his sister – are close family members.

The fourth badge of fraud was also present in this transaction, in that Mr. Abramov and his wife were in dire financial straits at the time he made the transfer to his sister. At the time of the sale, the debtors were subject to two judgments in favor of New World for more than $200,000. All of their New World Coffee shops had been closed and they have testified that they were living on Mrs. Abramov's salary as a beautician at J.C. Penny's.

The fact that the Forest Hills residence, which Mr. Abramov knew was valued at $400,000, was sold to his sister for a net sales price of $215,000, five months prior to the filing of the debtors' bankruptcy petition, and at a time when the Abramovs were subject to New World's judgments and restraining notices, amply supports the inference that this transfer was made with an intent to hinder, delay and defraud the Abramovs's creditors, an inference which Boris Abramov has failed to rebut with any credible explanation or evidence.

Section 727(a)(4)(A) of the Code provides an additional ground for denying Mr. Abramov's discharge, and for denying Mrs. Abramov's discharge. Section 727(a)(4)(A) of the Bankruptcy Code states that:

> (a) the court shall grant the debtor a discharge, unless– ...
>
> > (4) the debtor knowingly and fraudulently, in or in connection with the case–
> >
> > > (A) made a false oath or account; . . .

"The burden of proof rests with the party objecting to the discharge to establish the following elements in order to deny a debtor its discharge pursuant to § 727(a)(4)(A): (1) the debtor made a statement under oath, (2) such statement was false, (3) the debtor knew the statement was false, (4) the debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case." Bank of India v. Sapru (In re Sapru), 123 B.R. 948, 956 (Bankr. E.D.N.Y. 1990) (citations omitted).  A false oath may consist of (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings.  Id., 28 U.S.C.S. §1746, see also Nof v. Gannon (In re Gannon), 173 B.R. 313, 320 (S.D.N.Y. 1994) ("A debtor's petition and annexed schedules constitute a statement under oath for purposes of §727(a)(4)(A).").

Once the plaintiff makes a prima facie showing that a debtor knowingly made a false oath, the debtor must come forward with a credible explanation for his actions. Gannon, 173 B.R. at 320 (citations omitted).  A failure to do so is a sufficient ground for the denial of the debtors' discharge. Id.

The Abramovs made numerous false statements under oath on their petition and during the course of their §341 meeting and Rule 2004 examinations.  The debtors swore that the information they provided in their schedules and statement of affairs was true to the best of their knowledge and belief; however, the debtors have subsequently admitted that statements they made in their schedules and statement of financial affairs were false.

On their petition, the debtors listed the value of the Forest Hills residence as $300,000, and the amount of the mortgage on that property as $280,000.  As discussed above, Mr. Abramov testified at his Rule 2004 examination, and at the trial, that he based this value of the Forest Hills

residence on an appraisal that actually valued the home at $400,000. (Plaintiff Ex. 25). Indeed, Mr. Abramov effectively admitted that the information concerning the house and the mortgage set forth on the petition was inaccurate when he testified at his §341 meeting that the value of the house was $348,000 and that the mortgage was $223,000.

The debtors also stated on their petition that Mr. Abramov had a one-third interest in the Forest Hills residence when, in truth, he had sold his one-half interest in the property to his sister five months prior to filing his joint petition. Mrs. Abramov testified that, prior to the filing of their joint petition, she knew that Mr. Abramov had sold the Forest Hills residence to his sister, that he no longer had any ownership interest in the property, and that he had received over $27,000 from the sale. (Tr. Day 2 71:18-72:5.)[5] Nevertheless, Mrs. Abramov signed their joint petition, which asserted Mr. Abramov had an ownership interest in the house, and then testified at the §341 meeting that Mr. Abramov owned a part interest in the Forest Hills residence. (§341 Tr.6:12-24.)

The debtors claimed a $10,000 homestead exemption to which they were not entitled. Even if the debtors had owned an interest in the Forest Hills residence, which they admit they did not, their claim for an exemption was baseless as they did not use the house as their primary residence. Indeed, the debtors did not even list the Forest Hills residence as their primary address on the front page of their chapter 7 petition.

The statement of financial affairs omits to mention Mr. Abramov's share of the $75,000 gift of equity he and his mother made to his sister in connection with the sale of the Forest Hills residence, as well as the $27,230.63 he received as payment for the house (of which Mrs.

---

[5]"Tr. - Day 2" refers to the transcript of the second day of the trial, which was held on May 16, 2005.

Abramov admitted knowledge). Further, the statement of financial affairs indicates that the debtors have had no interests in any corporations in the past six years, while Mrs. Abramov testified at trial that they had owned at least 3 corporations during that time period. (Tr. - Day 2 14:16-19). The statement of financial affairs also omits a 401(k) plan in which Mrs. Abramov participated, and the sale by Mr. Abramov of his interest in the radio car in Boston, Massachusetts.

The debtors' statements were made knowingly and with the requisite fraudulent intent. Unlike §727(a)(2)(A), which requires a showing of actual intent to deceive in order to deny the debtor a discharge, §727(a)(4)(A) only requires that the debtor demonstrated a reckless disregard for the serious nature of the information sought and the necessary attention to detail and accuracy in preparing the petition or in answering questions in connection with the case. Sapru, 123 B.R. at 958 (citation omitted) (holding that a "reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar discharge"); Jordan v. Bren (In re Bren), 303 B.R. 610 (B.A.P. 8th Cir. 2004), rev'd in part on other grounds, 122 Fed. Appx. 285 (8th Cir. 2005) (debtors' statement that they had not read schedules or statement of affairs, which had numerous material omissions and false statements, but had merely relied on counsel, evidenced reckless disregard for the truth); Boroff v. Tully (In re Tully), 818 F.2d 106 (1st Cir. 1987) (reckless indifference to the truth is the equivalent of fraud).

Most of the inaccuracies on the debtors' petition have not been corrected by amendment despite the fact that the debtors have acknowledged these errors in testimony on several occasions. Even when looked at in a light most favorable to the Abramovs, the testimony that

both debtors have provided at their §341 meetings, their Rule 2004 examinations, and at the trial on this matter is materially different than the information contained in their petition and statement of financial affairs.

The debtors argue that they should not be denied a discharge, because any omissions on their petition were minor and not material. However, courts in this Circuit have held that any matter bearing on the discovery of estate property or the disposition of the debtor's property is material for purposes of §727(a)(4)(A). Gannon 173 B.R. at 320; Silverstein, 151 B.R. at 662, citing Walters v Sawyer (In re Sawyer), 130 B.R. 384 (Bankr. E.D.N.Y. 1991); Sapru, 123 B.R. at 957. Materiality does not depend upon whether the falsehood or omission contained in the debtors' petition turns out to be detrimental to creditors. In re Robinson, 506 F.2d 1184, 1188 (2d Cir. 1974). Even worthless assets and unprofitable business transactions must be disclosed in the debtors' petition. Gannon 173 B.R. at 320, citing In re Chalik, 748 F.2d 616, 618 (11th Cir.1984) (upholding the denial of discharge to a debtor who failed to list on his petition interests he had in then worthless corporations); Diorio v. Kreisler-Borg Construction Co., 407 F.2d 1330 (2d Cir.1969) (per curiam). The fact that the debtors have failed to disclose their interest in property that ultimately proves to have little or no value to their estate may be the basis for denying the debtors their discharge because "the determination of relevance and importance of the question is not for the Debtor to make. It is the Debtor's role simply to consider the question carefully and answer it completely and accurately." Sapru, 123 B.R. at 957, quoting In re Diodati, 9 B.R. 804, 808 (Bankr. D. Mass. 1981). "Thus a debtor may not be able to escape denial of discharge for making a false oath merely by asserting that the admittedly or falsely

stated information concerned a worthless business relationship or holding." Sapru, 123 B.R. at 957 (citations omitted).

Here, the debtors' overstatement of the amount of the mortgage on the Forest Hills residence, understatement of the value of the property, and failure to disclose the transaction with Ms. Pinkasov on their petition, is a material false oath because it relates to claims for the recovery of property or its value from Ms. Pinkasov, which might have been pursued by the chapter 7 trustee on behalf of creditors. Moreover, the evidence, taken as a whole, compels the conclusion that these false statements were made knowingly and with actual intent to defraud. It is apparent that, by stating in their petition that there was only $20,000 in equity in the Forest Hills residence and by claiming a $10,000 homestead exemption, the debtors hoped to portray this as an asset with no value to the estate and thereby avoid inquiry by the chapter 7 trustee into this matter. This is exactly the type of concealment of assets and transfers from the chapter 7 trustee, the creditors, and this Court, that §727(a)(4)(A) was meant to address.

Even if each of the other omissions and false statements made by the debtors, taken by itself, was too immaterial to warrant the denial of a discharge, these falsehoods and omissions, in the aggregate, are of sufficient materiality to bar the debtors' discharge under §727(a)(4)(A). Sapru, 123 B.R. at 957; Shah, 169 B.R. at 21 ("a false oath respecting worthless assets can constitute a material omission for the purpose of §727(a)(4)(A)"). The debtors' false oaths, taken together, are material because they relate to the debtors' assets and business dealings and were misleading.

The debtors offer no credible explanation or justification for these falsehoods. In their defense, they assert that their amendment to schedules A and C to their petition (in which they

removed the Forest Hills residence and their claimed exemption for that property) demonstrates that they did not have the requisite intent to defraud their creditors.  However, it was not until New World sought relief from the automatic stay to pursue the Forest Hills residence and sought discovery from Ms. Pinkasov, and Ms. Pinkasov objected to New World's request, in the process revealing her ownership of the Forest Hills residence, that the Abramovs filed an amendment to their schedules.  It is also noteworthy that the debtors' amendment did not address any of the other omissions or inaccuracies in their petition.

While the Abramovs have a right to file amendments to their petition and schedules at any time prior to the closing of their case pursuant to Federal Bankruptcy Rule 1009, "subsequent disclosure by the debtor[s] is not sufficient to overcome the allegations of false oath or account." Sapru, 123 B.R. at 959, quoting  In re Braun, 98 B.R. 382, 386 (Bankr. N.D.Ill 1989); Pigott v. Cline (In re Cline), 48 B.R. 581 (Bankr. E.D.Tenn 1985) ("Amendment does not expunge the falsity of oath."), citing Mazer v, United States, 298 F.2d 579, 582 (7th Cir. 1962).  It is clear that the debtors' intent in making these material false oaths in their petition was to delay, hinder, and defraud their creditors.

This Court found the Abramovs's testimony at trial with respect to the omissions and inaccuracies contained in their petition to be wholly lacking in credibility.  The debtors were both evasive their testimony, stating that they did not know or did not remember in contexts where this response was incredible and amounted to a refusal to answer the question.  It is simply inconceivable that at the time their petition was being prepared the debtors both forgot that Mr. Abramov had five months earlier sold his interest in the Forest Hills residence to his sister and received over $27,000 from the sale.  It should also be noted that the chapter 7 trustee observed

on the record at the Abramovs's §341 meeting that the debtors were laughing during the discussion of the Forest Hills residence (§341 Tr. 19:17-22), which is consistent with their demonstrated lack of appreciation of the serious nature of their obligations as debtors and with their reckless disregard for the truth.

### Conclusion

For the foregoing reasons, Boris Abramov is denied a discharge pursuant to Bankruptcy Code §§727(a)(2)(A) and 727(a)(4)(A) and Nina Abramov is denied a discharge pursuant to §727(a)(4)(A).

Because this Court concludes that the debtors' discharge must be denied under §§727(a)(2)(A) and 727(a)(4)(A), it is not necessary to decide whether their discharge should also be denied under §727(a)(5).

The plaintiff is directed to settle a separate order and judgment consistent with the foregoing.

Date: Brooklyn, New York
      August 31, 2005

*s/Carla E. Craig*
CARLA E. CRAIG
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                              Chapter 7

    NINA ABRAMOV and
    BORIS ABRAMOV                              Case No. 02-26287-608

                             Debtors.
-------------------------------------------------------------x
NEW WORLD RESTAURANT GROUP, INC.,

                     Plaintiff,        Adv. Pro. No. 03-1688-608

     - against -

BORIS ABRAMOV and NINA ABRAMOV,

                   Defendants.
-------------------------------------------------------------x

## MAILING CERTIFICATE

        I, Vivian Greene, Judicial Assistant to the Honorable Carla E. Craig, hereby affirm that on August 31, 2005 a copy of an Order was delivered to the parties named below by United States Postal Service first class mail, telecommunication, facsimile or any other delivery method, as follows:

| | |
|---|---|
| Bruce H. Babitt, Esq. | Steve C. Okenwa, Esq. |
| Wolman, Babitt and King, LLP | 902 Kings Highway |
| 521 Fifth Avenue | Brooklyn, New York 11223 |
| New York, New York 10175 | Attorney for the Defendants |
| Attorney for the Plaintiff | |

Dated: Brooklyn, New York
       August 31, 2005

                                                                  *s/Vivian Greene*
                                                                   Vivian Greene